UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DEJUMA CAMPBELL,

    Plaintiffs,

--against--

BRENTWOOD UNION FREE SCHOOL
DISTRICT, SONDERLINGS HIGH SCHOOL,
WILLIE McNEIL, RAVEN McNEIL, JOHN
MURPHY, in his official and individual capacity,
RICHARD LOESCHNER, in his official and
individual capacity, JEANETTE SUAREZ, in
her official and individual capacity, and
DANIEL DANBUSKY, in his official and
individual capacity,

    Defendants.
------------------------------------------------------------X

MEMORANDUM AND ORDER

CV 12-1582
(LDW)

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y

★  NOV 13 2012  ★

LONG ISLAND OFFICE

APPEARANCES:

Law Offices of Frederick K. Brewington
By: Johanna C. David, Esq.
556 Peninsula Boulevard
Hempstead, NY 11550
Attorneys for Plaintiff

Congdon, Flaherty, O'Callahan, Reid, Donlon, Travis & Fishlinger
By: Laura A. Endrizzi, Esq.
333 Earle Ovington Boulevard Suite 502
Uniondale, NY 11553-3625
Attorneys For School District Defendants

Sobel Law Group, LLC
By: Mark G. Vaughan, Esq.
464 New York Avenue, Suite 100
Huntington, NY 11743
Attorneys for Willie McNeil and Raven McNeil

1

WEXLER, District Judge:

Plaintiff Dejuma Campbell ("Plaintiff") brings this action asserting civil rights claims pursuant to 42 U.S.C. §1983 ("Section 1983"), and claims pursuant to New York State law. All claims arise out of an incident, described in greater detail below, that took place on or about March 30, 2011, on the grounds of the Sonderlings High School ("Sonderlings"), within the Brentwood Union Free School District (the "School District"). In addition to naming the School District and Sonderlings as defendants, Plaintiff names as defendants School District employees: (1) John Murphy ("Murphy") and Annette Suarez ("Suarez"), two of Sonderlings' Assistant Principals, (2) Richard Loeschner, Sonderlings' Principal ("Loeschner"), and (3) Daniel Danbusky, a Sonderlings teacher (Danbusky") (collectively the ("School Defendants"). Finally, Plaintiff names as Defendants Raven McNeil, a Sonderlings student, and her father, Willie McNeil (collectively the "McNeils").

Plaintiff asserts federal claims pursuant to Section 1983 against the School Defendants, and state law claims against all individually named Defendants. Presently before the court is the School Defendants' motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint. The McNeils join in the motion to the extent of asking that this court decline to exercise jurisdiction over any state law claims if the federal claims are dismissed.

## BACKGROUND

I.  The Allegations of the Complaint

2

The factual allegations set forth below are drawn from Plaintiff's complaint, are presumed true, and construed in the light most favorable to Plaintiff for the purpose of deciding this motion to dismiss.

Plaintiff was, at all relevant times, a student at Sonderlings. On or about March 30, 2011, Plaintiff was taken to the Sonderlings discipline office (the "Office") for questioning about an event that took place in the school cafeteria. Plaintiff was not the subject of any investigation as to what occurred in the cafeteria, and that incident is relevant only because it places Plaintiff at the Office when the following events unfolded. Plaintiff alleges that he was standing outside of the Office when he was approached by the McNeils. Raven McNeil is alleged to have pointed Plaintiff out to her father, who began threatening Plaintiff and poking him in the chest while asking why he was "messing" with his daughter, and about her hat. At the same time, Raven McNeil, described as an approximately 200 pound, six foot tall female, is alleged to have blocked Plaintiff's path, punched him in the eye and slammed him into the door of the Office. Willie McNeil is then alleged to have choked Plaintiff, lifted him off the ground and shoved him into a glass trophy display.

Plaintiff was released from Willie McNeil's grip only upon the arrival of a Sonderlings security guard. Defendant teacher Danbusky then appeared at the scene, asked Plaintiff what occurred and called his mother. Suffolk County Police were called. A police officer appeared and asked that Plaintiff sign a civilian arrest form, which he did. Shortly thereafter, Rushie Brown, Plaintiff's mother ("Brown"), arrived at the school. Loeschner is alleged to have apologized to Brown and to have commented that Willie McNeil was not lawfully on school grounds and should be arrested.

Plaintiff alleges that his mother visited Sonderlings on several occasions prior to the March incident and to have alerted Dubansky, Murphy, Loeschner and Suarez as to her concerns about Raven McNeil. It is alleged that despite Brown's warnings, the School Defendants "took no corrective action or steps to protect Plaintiff thereby condoning the ongoing violent actions of Raven McNeil." These Defendants are further alleged to have failed to secure the school grounds, and failed to follow rules with respect to the entrance of an unauthorized person. These actions are alleged in support of Plaintiff's allegation that the failure to provide a "safe and secure environment for Plaintiff," rose to the level of condoning the violent acts of March 2011.

II.     Plaintiff's Claims and the Motion to Dismiss

Plaintiff alleges two federal claims and five claims pursuant to state law. The federal claims are, as noted, alleged pursuant to Section 1983. The claims against the individually named School Defendants allege the direct violation of Plaintiff's substantive due process liberty right as secured by the Fourteenth Amendment to the United States Constitution. Specifically, Plaintiff alleges that these Defendants breached their Constitutionally imposed duty to provide for the reasonable safety and care of students in their control and custody. The federal claims against Sonderlings and the District are stated pursuant to Monell v. New York City Dep't. Of Soc. Services, 436 U.S. 658 (1978), and allege a pattern and practice of failing to protect students in general, and Plaintiff in particular.

The state claims alleged against the School Defendants allege general negligence and negligent failure to supervise students and visitors to Sonderlings. Plaintiff also alleges state law claims of negligent and intentional infliction of emotional distress against both the School

Defendants and the McNeils. Finally, Plaintiff alleges state law claims of assault and battery against the McNeils.

The School Defendants move to dismiss. Relying primarily on the seminal decision of the Supreme Court in DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189 (1989), these Defendants seek dismissal of the Section 1983 claim on the ground that the Constitution imposes no duty on the part of state actors to protect Plaintiff from the privately inflicted harm set forth in the complaint. It is further argued that in the absence of a direct violation of Section 1983, there can be no Monell claim. Any such cause of action is further alleged to be subject to dismissal because Plaintiff cannot show an unconstitutional policy. In the event that the Section 1983 claims are not dismissed, the individual School Defendants seek dismissal of these claims on the ground of qualified immunity. Finally, in an argument joined by the McNeils, the School Defendants ask that, in the event that the federal claims are dismissed, the court refrain from exercising jurisdiction over the state law claims. After setting forth applicable legal principles the court will turn to the merits of the motion.

## DISCUSSION

I.  Legal Principles

   A.  Standards on Motions to Dismiss

In considering a motion to dismiss made pursuant to Rule 12(b)(6), the court must accept the factual allegations in the complaints as true, and draw all reasonable inferences in favor of plaintiffs. Bold Electric, Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995). In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court rejected the standard set forth in Conley v. Gibson, 355 U.S. 41 (1957), that a complaint should not be dismissed, "unless

it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," id. at 45-46. The Supreme Court discarded the "no set of facts" language in favor of the requirement that plaintiff plead enough facts "to state a claim for relief that is plausible on its face." Twombly, 550 U.S. at 570; see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). Although heightened factual pleading is not the new standard, Twombley holds that a "formulaic recitation of cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1959. Further, a pleading that does nothing more than recite bare legal conclusions is insufficient to "unlock the doors of discovery." Iqbal, 129 S. Ct. at 1950.

B. Section 1983 Claims

Plaintiff claims that the School Defendants violated Plaintiff's substantive due process right to be free from harm by failing to properly protect him from attack by the McNeils. The Substantive Due Process Clause of the Fourteenth Amendment has been interpreted to include an "individual's interest in bodily integrity." Chambers v. North Rockland Central School Dist., 815 F. Supp.2d 753, 762 (S.D.N.Y. 2011), quoting, Lombardi v. Whitman, 485 F.3d 73, 78–79 (2d Cir. 2007). That right, however, is intended to prevent the government "from abusing [its] power, or employing it as an instrument of oppression," DeShaney, 489 U.S. at 196. It does not speak to a general right to protection from private harm. Thus, the Supreme Court has held clearly that nothing in the Constitution requires the State "to protect the life, liberty, and property of its citizens against invasion by private actors." Id. at 195 (emphasis added). Put simply, the purpose of the Due Process Clause was "to protect the people from the State, not to ensure that the State protected them from each other." Id. at 196; see also K.W. v. City of New York,

275 F.R.D. 393, 397 (E.D.N.Y. 2011); Chambers, 815 F. Supp.2d at 763 (noting that Second Circuit emphasizes that "[o]nly an affirmative act can amount to a violation of substantive due process, because Due Process is phrased as a limitation of the State's power to act, not as a guarantee of certain minimal levels of safety and security"), quoting, Lombardi, 485 F.3d at 79.

The broad rule set forth in DeShaney is subject to two narrow exceptions. Specifically, a substantive due process claim arising out of private harm may be stated of: (1) the victim of private conduct was in a "special relationship," with the State or (2) the state or its agents "in some way assisted in creating or increasing the danger to the victim." Matican v. City of New York, 524 F.3d 151, 155 (2d Cir. 2008). Even if one of these exceptions apply, a plaintiff faces the additional hurdle of showing that the defendant's conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Id. at 155, quoting, County of Sacramento v. Lewis, 523 U.S. 833, 848 n. 8 (1998); see also Smith v. Half Hollow Hills Cent. School Dist., 298 F.3d 168, 173 (2d Cir. 2002); Chambers, 2011 WL 4472179 *7.

The touchstone of the "special relationship" exception to the DeShaney rule is the requirement that the state has somehow placed the victim within its custody. The special relationship created by such custody includes imprisonment and involuntary institutionalization, but does not include non-custodial relationships such as that existing between a confidential informant and the government. See Matican, 524 F.3d at 156. Importantly, courts are generally in agreement that the "special relationship" doctrine does not apply to a school setting. See Chambers, 815 F. Supp.2d at 764 n. 10 (collecting cases).

As to the second exception to DeShaney, referred to as the "state-created danger" exception, a plaintiff seeking to state such a claim must show more than the State's general

7

knowledge of a danger; he must show that the State assisted in "creating or increasing the danger that the victim faced at the hands of a third party." Matican, 524 F.3d at 157. The requirement of showing that the State has taken an active role in the deprivation of a right stems from the acknowledgment that due process is, as noted above, defined as a limitation on the acts of the State, and not as a guarantee of state action. Lombardi, 485 F.3d at 79. Thus, while passive conduct does not therefore fall within the state-created danger exception, id., the Second Circuit has held that a claim is stated where the defendant's facilitation of a private attack amounts to affirmative conduct necessary to state a due process violation. Pena v. DePrisco, 432 F.3d 98, 109 (2d Cir. 2005).

Affirmative encouragement of particular violence was held to state a claim in Dwares v. City of New York, 985 F.2d 94 (2d Cir. 1993). There, the Second Circuit held that a due process claim was stated where police officers knew of, and failed to intercede to stop a particular violent attack. In Dwares, the plaintiff had been assaulted by "skinheads" while a participant in a political rally that involved the burning of an American flag. The defendant police officers witnessed the attack on the victim in Dwares. Additionally, there was evidence that the police were informed of the possibility of violence by skinheads at the event, and told the attackers that they would not interfere with an attack on the flag burners. Dwares, 985 F.2d at 98. Such "prearranged official sanction of privately inflicted injury," was held to state a claim under the Due Process Clause. Id.

Critical to the holding in Dwares, and other cases where the state-created danger has been held to apply, is the fact that an agent of the State, typically a law enforcement officer, was shown to have had a particular relationship with the perpetrator of the violence. Lombardi, 485

F.3d at 80; see also Chambers, 815 F. Supp.2d at 764 (the state created danger doctrine requires showing of relationship between State and plaintiff's assailant, and not simply a relationship between State and individual attacked). In Dwares, for example, the officers knew of the impending attack and knew where it would take place, encouraged it to take place, witnessed the attack and failed to intercede on behalf of the victim. Other state-created danger cases have been sustained on similar facts. See, e.g., Hemphill v. Schott, 141 F.3d 412, 418 (2d Cir. 1998) (state-created danger held to exist where police officers returned gun to former police officer/crime victim, took gun owner along to arrest and allowed shooting).

II. Disposition of the Motion

As an initial matter, this court agrees with other courts in this circuit and elsewhere in holding that Plaintiff's status as a student did not put him in the custody of the State at the time of the attack, foreclosing any reliance on the "special relationship" exception to DeShaney. Accord Chambers, 815 F. Supp.2d at 764 n. 10. Plaintiff can therefore rely only on the state-created danger theory of due process liability to state a claim. For the reasons set forth below, the court holds that the complaint here sets forth no such plausible claim.

This matter is governed directly by DeShaney and Second Circuit case law interpreting the state-created danger exception to the rule therein. Those cases refuse to impose liability based upon the allegation that the state failed to protect a plaintiff from even a known danger of bodily harm. See Chambers, 2011 WL 4472179 *7. Thus, the Second Circuit, guided by DeShaney has noted that there can be no liability under the state-created danger doctrine where state actors "had done nothing worse than failing to take action even though suspicious circumstances may have counseled an active role." Matican, 524 F.3d at 157, quoting,

9

Deshaney, 498 U.S. at 203. Instead, the exception is limited to facts showing a relationship between the criminal and the State. Chambers, 2011 WL 4472179 *7.

Even construing the facts most favorably to Plaintiff shows no such relationship between Plaintiff and any School Defendant. As noted, the state created danger theory of liability requires a finding of affirmative conduct on the part of the Defendant, usually acting in direct concert with the perpetrator and witnessing the violence. Moreover, as noted, such behavior must rise to the level of "egregious conduct" that shocks the conscience. Smith, 298 F.3d at 173. This requires more than the facts pleaded here. Even assuming the truth of the allegations of the complaint, i.e., that Plaintiff's mother communicated with the school about Raven McNeil's conduct prior to the attack, and that Willie McNeil had entered school grounds without authorization, such complaints are insufficient to support a claim that the School Defendants created the danger to Plaintiff. Indeed, the allegations support nothing more than claims that the School Defendants received complaints about the animosity between two students and were less than vigilant in enforcing their own rules about entry of parents on school grounds. While the failure to create greater security barriers for entry to a public school may, at best and under certain circumstances, support some finding of state law negligence, it cannot support a Constitutional violation based upon a state created danger theory of liability. Far more intentional active conduct is required to state such a claim. Accord Smith v. Guilford Bd. of Educ., 2007 WL 1725512 *2 (2d Cir. 2007) (school district's failure to respond to harassment, although "highly unfortunate," did not rise to level of Constitutional violation) (2d Cir. 2007).

In sum, Plaintiff's complaint sets forth no plausible claim that the state actors named here actively participated, within the meaning of DeShaney, in the attack on Plaintiff. He therefore

10

states no Due Process violation and his claim pursuant to Section 1983 must be dismissed. Accord Chambers, at 815 F. Supp.2d at 767. The court's holding that Plaintiff states no Constitutional violation makes it unnecessary to consider either the individual School Defendants' claims of qualified immunity, or the issue of liability under Monell. Matican, 524 F.3d at 154, 155 n.1.

In view of dismissal of the federal claims, the court declines to exercise jurisdiction of any state law claim alleged against either the individual School Defendants or the McNeils. See 28 U.S.C. §1367(c)(3). The complaint is therefore dismissed, in its entirety.

## CONCLUSION

For the foregoing reasons, the court grants the motion of the School District Defendants to dismiss the complaint. The Clerk of the Court is directed to terminate the motion appearing at docket entry 14 in this matter and to thereafter close the file in this case.

SO ORDERED.

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
November 13, 2012